UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PERCY GREEN,                         )
                                     )
        Plaintiff(s),                )
                                     )
    vs.                              )   Case No. 4:05CV198 JCH
                                     )
CITY OF ST. LOUIS, et al.,           )
                                     )
        Defendant(s).                )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, filed February 24, 2006. (Doc. No. 87). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Defendant St. Louis Development Corporation ("SLDC") is a not for profit corporation. (Defendants' Uncontroverted Facts ("Defendants' Facts"), ¶ 5). In 1993, Plaintiff Percy Green, an African American, was hired by SLDC as Deputy Director of the Women/Minority Business Enterprise ("W/MBE") Certification and Compliance Program. (Id., ¶ 7). The W/MBE Certification and Compliance Program was responsible for the administration and enforcement of the City of St. Louis' Women and Minority Business Enterprise Participation Program. (Id., ¶ 8). In approximately 1997, the program was split into a certification section and a compliance section, and a new director, Wendell Black, became Director of the W/MBE compliance program. (Id., ¶¶ 9, 11). At that time, Plaintiff continued as Director of the W/MBE certification program only. (Id., ¶ 10).[1]

---

[1] According to Plaintiff, his role as director of the certification program was, "to determine if business firm[s] were really owned, controlled and operated by minorities (MBE) or by women (WBE), or both, or whether they were false 'fronts' or firms were so arranged to look like they were minority or female owned, controlled and operated, but really were not." (Plaintiff's Statement of Material Facts to which a Genuine Issue of Fact Exists, ¶ 1a).

Since 1991, Defendant City of St. Louis, through the Lambert-St. Louis International Airport Contract Administration/Disadvantaged Business Enterprise ("DBE") Office, has provided certification and compliance services for DBEs.[2] (Defendants' Facts, ¶ 12). DBE certifications are governed by federal regulation, and necessary for participation as a DBE in certain federally funded projects. (Id., ¶ 14). The Director of the DBE office at the Airport is Jack Thomas, an African American. (Id., ¶ 13).

Shortly after Defendant Francis Slay took office as Mayor of the City of St. Louis in April, 2001, a review of the W/MBE Certification and Compliance Program was conducted by Defendant Rita Kirkland, Special Assistant to the Mayor. (Defendants' Facts, ¶¶ 1, 4, 23).[3] According to Defendants, the review conducted by Defendant Kirkland determined that the functions performed by SLDC's W/MBE certification and compliance program could be performed more efficiently and with fewer complaints by the Airport's Contract Administration/DBE office. (Id., ¶ 24).[4] After reviewing Defendant Kirkland's report, Defendants Slay, Jeff Rainford[5] and Barbara Geisman[6]

---

[2] A DBE is a for profit small business that is both socially and economically disadvantaged. (Defendants' Facts, ¶ 15).

[3] Defendants maintain they undertook the review in order to investigate the numerous complaints received regarding delays in the certification process, lack of communication regarding the status of certification applications, and denials of certification. (Defendants' Facts, ¶¶ 21, 23). Plaintiff conversely maintains the investigation was undertaken in response to a June, 2001, article in the St. Louis Post Dispatch, in which Plaintiff was quoted, and to Plaintiff's memoranda protesting SLDC's policy of reciprocity in the granting of certifications. (Plaintiff's Response to Defendants' Uncontroverted Facts, ¶ 23).

[4] Plaintiff denies the report reached this conclusion. (Plaintiff's Response to Defendants' Uncontroverted Facts, ¶ 24).

[5] Since April, 2001, Defendant Jeff Rainford has been the Mayor's Chief of Staff. (Defendants' Facts, ¶ 2).

[6] Since April, 2001, Defendant Barbara Geisman has been the Executive Director/Deputy Mayor for Development for the City of St. Louis, and the Chairman of the SLDC Board. (Defendants' Facts, ¶ 3).

decided that the functions of SLDC's W/MBE's Certification and Compliance Programs should be transferred to the Airport. (Id., ¶ 25). On September 25, 2001, SLDC and the City of St. Louis, by and through Lambert-St. Louis International Airport, entered into a Memorandum of Understanding, whereby the Airport would provide W/MBE certification and compliance services for City funded projects, and SLDC would reimburse the Airport for the costs associated with the program. (Id., ¶ 27). As a result, on September 26, 2001, SLDC eliminated its W/MBE Certification and Compliance Section, and laid off its employees who had performed certification and compliance functions, including Plaintiff.[7] (Id., ¶ 28).[8]

Plaintiff filed his Third Amended Petition and Complaint in this matter on October 3, 2005. (Plaintiff's Third Amended Petition and Complaint ("Complaint" or "Compl.")). Plaintiff's First Cause of Action ("Count I") was brought pursuant to 42 U.S.C. §§ 1981, 1981a, 1983, and 1985, for alleged violations of Plaintiff's First, Fifth and Fourteenth Amendment rights, and for conspiracy to violate such rights. Specifically, Plaintiff alleged that Defendants discriminated against him on the basis of race, and fired him in retaliation for his engagement in various protected civil rights activities. (Compl., ¶¶ 9-11).

Plaintiff's Second Cause of Action ("Count II") was brought pursuant to 42 U.S.C. §§ 1981, 1981a, 1983, and 1985, for alleged violations of his First, Fifth, Thirteenth and Fourteenth Amendment rights, and for conspiracy to violate such rights. Specifically, Plaintiff alleged that he

---

[7] The names and races of each SLDC employee laid off on September 26, 2001, are as follows: Plaintiff Percy Green (African American); Wendell Black (African American); Earline Bell Shannon (African American); Beverly Govan Wallace (African American); Keri Kugler (Caucasian); and Greta Rothmiller (African American). (Defendants' Facts, ¶ 50).

[8] Defendants maintain the transfer of functions to the Airport was the sole reason for the elimination of the section and the layoff of employees. (Defendants' Facts, ¶ 28). Plaintiff conversely maintains his layoff was the result of, "a whole process of retaliatory administrative shuffling." (Plaintiff's Response to Defendants' Uncontroverted Facts, ¶ 28).

was hindered in his ability to determine whether to grant minority status in an objective manner when Defendants: (a) denied sufficient staff and funding to Plaintiff's department; (b) suggested that Plaintiff grant false certification for preferred enterprises; and (c) withdrew sole certification authority from Plaintiff's department, insisting instead on reciprocal grants of certification. (Compl., ¶¶ 17, 19). Plaintiff further asserted he was pressured by Defendants to commit fraud, by issuing false certifications, and was fired when he objected to the acts of fraud and dishonesty. (Id., ¶¶ 21, 22). Plaintiff thus asserted Defendants, individually and in conspiracy: (1) violated his First Amendment rights, by limiting his right to deliver honest public reports as to the certification status of various entities; (2) violated his Fifth Amendment rights, by attempting to force him to self-incriminate by giving false certifications; (3) violated his Fourteenth Amendment right to equal protection, by retaliating against him for protecting the Thirteenth Amendment rights of persons to contract with government; and (4) violated state law and public policy. (Id., ¶¶ 24-26).

Finally, in his Third Cause of Action ("Count III"), Plaintiff purported to bring a retaliation claim pursuant to the whistle-blower protection provision of the False Claims Act, 31 U.S.C. § 3730(h). (Compl., ¶¶ 30-34).

In an Order entered January 23, 2006, this Court dismissed Plaintiff's claims of conspiracy. (Doc. No. 80). The Court further dismissed Plaintiff's claims under the Fifth and Thirteenth Amendments, and his claim in Count II under the Fourteenth Amendment. (Id.). Finally, the Court dismissed Plaintiff's claims under 42 U.S.C. § 1985, and his claims of violations of state law. (Id.).

As stated above, Defendants filed the instant Motion for Summary Judgment on February 24, 2006, asserting that based on the uncontroverted facts, they are entitled to judgment as a matter of law on Plaintiff's remaining claims. (Doc. No. 87).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Failure To Re-Hire

In each of his causes of action, Plaintiff includes a claim that Defendants unlawfully refused to re-hire him, following his termination. The Court considers Plaintiff's claim to be equivalent to one of failure to hire, and thus will apply those standards here. In order to state a claim for failure

to hire, Plaintiff must show, among other things, that he applied and was qualified for a job for which Defendants were seeking applicants. Chambers v. Wynne School Dist., 909 F.2d 1214, 1216 (8th Cir. 1990) (citations omitted). Upon review of the record, the Court finds Plaintiff fails to present sufficient evidence on this element. For example, Plaintiff does not dispute the fact that he never applied for another position with Defendants following his termination. (See Defendants' Facts, ¶ 54, and Plaintiff's Response thereto).[9] Further, although Plaintiff alleges several jobs for which he was qualified were filled subsequent to his termination, Plaintiff offers no evidence regarding the necessary qualifications for such positions (and how he satisfied them), or the qualifications of the persons ultimately hired for the positions. (See Plaintiff's Memorandum of Law and Authorities ("Plaintiff's Response"), P. 4; Plaintiff's April 26, 2006 Affidavit). In light of these deficiencies, Defendants' Motion for Summary Judgment on this issue will be granted.

## II. First Amendment Retaliation

In Counts I and II of his Complaint, Plaintiff claims Defendants terminated his employment in retaliation for his engaging in speech protected by the First Amendment. Specifically, Plaintiff asserts he engaged in protected speech as follows: (1) Plaintiff participated in various protected civil rights activities designed to promote and protect the civil rights and employment and contract rights of African American Blacks and persons of color; and (2) Plaintiff objected to Defendants' policy of permitting inaccurate determinations of MBE or WBE status, brought about through either

---

[9] Plaintiff further does not dispute Defendants' assertion that following their lay-offs, two other African-American employees from the W/MBE Certification and Compliance Section applied for other positions with SLDC and were hired. (See Defendants' Facts, ¶ 53, and Plaintiff's Response thereto).

inadequate investigation or the granting of reciprocity.[10] (Compl., ¶¶ 9, 19-24). The Court will address Plaintiff's allegations in turn.

### A. Plaintiff's Objections Regarding The Certification Process

In Count II of his Complaint, Plaintiff alleges Defendants violated his rights under the First Amendment, when they terminated his employment in retaliation for his expressed objections to Defendants' certification policies. (Compl., ¶ 19-24). Plaintiff's First Amendment retaliation claim is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Graning v. Sherburne County, 172 F.3d 611, 615 (8th Cir. 1999). To establish a *prima facie* case of First Amendment retaliation, Plaintiff must show: 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) there existed a causal connection between the adverse employment action and Plaintiff's participation in protected activity. Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002) (citations omitted). If Plaintiff is successful in establishing a *prima facie* case, the burden then shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Graning, 172 F.3d at 615. If Defendants meet this burden, the burden shifts back to Plaintiff, who must prove that Defendants' proffered reason is merely a pretext for discriminatory animus. Duffy, 276 F.3d at 991 (citation omitted).

In their Motion for Summary Judgment, Defendants first assert Plaintiff fails to establish a *prima facie* case of First Amendment retaliation, as his expressed opposition to Defendants' certification policies did not constitute protected activity. (Memorandum in Support of Defendants'

---

[10] The reciprocity policy and procedure was instituted in August, 2000, by former Mayor Clarence Harmon. (Defendants' Facts, ¶ 18). Under that policy, applicants to the City's W/MBE Certification Department who currently possessed certification from a local, state or federal agency other than SLDC, would automatically qualify for certification from SLDC. (See Defendants' Exh. F).

Motion for Summary Judgment ("Defendants' Memo in Support"), P. 6). Rather, Defendants maintain Plaintiff's letters and memoranda addressed only historical information regarding the W/MBE certification program, the internal operations of the certification program, and personnel issues, none of which constituted protected speech. (Id.).

The Eighth Circuit has held that, "'[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" Mumford v. Godfried, 52 F.3d 756, 760 (8th Cir. 1995), quoting Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The Eighth Circuit continued as follows:

> Where a public employee speaks out in public or in private on matters that relate solely to the employee's parochial concerns as an employee, no first amendment interests are at stake....The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

Mumford, 52 F.3d at 760, quoting Cox v. Dardanelle, 790 F.2d 668, 672 (8th Cir. 1986) (footnote and citations omitted); see also Burnham v. Ianni, 119 F.3d 668, 679 (8th Cir. 1997).

In viewing the evidence in the light most favorable to Plaintiff, the Court finds that with his communications, including any discussions he may have had with St. Louis Post Dispatch reporters prior to publication of the June 17, 2001, article (Plaintiff's Exh. 20)[11], Plaintiff was acting as a concerned public citizen speaking on a matter of public interest, not merely as an employee concerned

---

[11] In their reply memorandum, Defendants assert the June, 2001, article is not part of the record in this matter, as Plaintiff did not produce it in response to Defendants' Requests for Production, or reference it in his Answers to Interrogatories. (Defendants' Reply Memorandum in Support of their Motion for Summary Judgment, P. 4). While this may be true, the Court notes the article is referenced in several memoranda Plaintiff did produce, and so the Court will permit Plaintiff to rely on it here.

- 8 -

only with internal policies or practices. Mumford, 52 F.3d at 760 (citation omitted). The Court thus finds an issue of fact remains with respect to whether Plaintiff's speech was intended to generate public debate, and thus is entitled to protection under the First Amendment, or merely to engender personal gain. Connick, 461 U.S. at 147-48.

Defendants next assert Plaintiff cannot establish a *prima facie* case of First Amendment retaliation, as he fails to demonstrate the existence of a causal connection between his participation in protected activity and the adverse employment action. (Defendant's Memo in Support, PP. 6-7). Upon consideration, however, the Court finds a genuine issue of fact remains as to the existence of a causal connection between the two, in light of the temporal proximity between the airing of Plaintiff's concerns in the newspaper on June 17, 2001, the undertaking of a review of Plaintiff's department in June, or July, 2001, and the termination of his employment on September 26, 2001. EEOC v. Kohler Co., 335 F.3d 766, 774 (8th Cir. 2003). The Court further finds Defendants have met their burden of offering a legitimate, nondiscriminatory reason for the termination, specifically, their decision that the functions of SLDC's W/MBE's Certification and Compliance Program should be transferred to the Airport, in order to expedite processing, reduce confusion, minimize duplication of services, and improve oversight. (Defendants' Facts, ¶ 25).

The resolution of Plaintiff's First Amendment retaliation claim thus depends upon Plaintiff's ability to demonstrate pretext, and upon review of the record, the Court finds Plaintiff offers sufficient evidence of pretext to survive a motion for summary judgment. First, as noted above, a review of Plaintiff's department was instituted within weeks of the appearance of the newspaper article, and Plaintiff was terminated within months after submitting his complaints to Defendants and the Post Dispatch. Although temporal proximity alone generally is insufficient to establish pretext, it is relevant to the analysis. Kohler, 335 F.3d at 774. Further, Defendants do not dispute Plaintiff's

assertion that the Airport DBE Office possessed a backlog of applications equal to that of Plaintiff's department, thus lending credence to his claim the decision was based on considerations of retaliation rather than efficiency. (See Plaintiff's Response, P. 15; Defendants' Exh. P, P. 6). Defendants' Motion for Summary Judgment on this issue will therefore be denied.[12]

### B. Plaintiff's Alleged Participation In Civil Rights Activities

Plaintiff next alleges Defendants violated his rights under the First Amendment, when they terminated his employment in retaliation for his participation in various protected civil rights activities. (Compl., ¶ 9). As stated above, in order to establish a *prima facie* case of First Amendment retaliation, Plaintiff must show: 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) there existed a causal connection between the adverse employment action and Plaintiff's participation in protected activity. Duffy, 276 F.3d at 991 (citations omitted).

Upon consideration, the Court finds Plaintiff cannot establish a *prima facie* case of First Amendment retaliation, as he fails to demonstrate a causal connection between his alleged civil rights activities and his termination. Specifically, the Court notes that Plaintiff's termination occurred in September, 2001, many years after the majority of his protests had concluded. Further, Plaintiff offers no evidence Defendants were present at any of his protests, or even aware on any level of his prior activities.[13] (See, e.g., Green Depo. II, P. 32). Under these circumstances, the Court finds no

---

[12] The Court recognizes the unlikelihood Defendants would retaliate by eliminating both Plaintiff's department and another not under his control. To grant judgment as a matter of law on this issue would require weighing Defendants' evidence of legitimacy against Plaintiff's evidence of pretext, however, something the Court is not permitted to do.

[13] With respect to both Plaintiff's issuance of a September 26, 2001, press release, and his alleged organization of a demonstration outside the Mayor's Office at City Hall in December, 2001, the Court notes both events took place after his termination, and thus are irrelevant for purposes of this discussion.

evidence of a causal connection between Plaintiff's participation in prior protected activity and his termination, and so Defendants' Motion for Summary Judgment on this issue will be granted.

### III.  Race Discrimination

Plaintiff's Sections 1981 and 1983 claims of race discrimination are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. at 802. Roark v. City of Hazen, Ark., 189 F.3d 758, 761 (8th Cir. 1999) (citation omitted). Under this framework, Plaintiff has the initial burden of establishing a *prima facie* case of race discrimination. Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998), citing Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997). If he is successful in establishing a *prima facie* case, a rebuttable presumption of discrimination arises. Id. (citation omitted). The burden then shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Roark, 189 F.3d at 761 (citation omitted). Once Defendants articulate such a reason, the presumption of discrimination disappears, and Plaintiff must prove that Defendants' proffered reason is merely a pretext for discriminatory animus. Rose-Maston, 133 F.3d at 1107 (citation omitted). At all times, the ultimate burden of persuasion remains with Plaintiff. Roark, 189 F.3d at 761 (citation omitted).

In the instant case, Plaintiff alleges Defendants engaged in race discrimination when they terminated Plaintiff's employment in September, 2001. In order to establish a *prima facie* case of race discrimination with respect to these allegations, Plaintiff must show that: "1) [he] was a member of a protected group, 2) [he] was meeting the legitimate expectations of [his] employer, 3) [he] suffered an adverse employment action, and 4) [] similarly situated employees, who are not members of the protected group were treated differently." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir.

2000), citing Austin v. Minnesota Mining & Mfg. Co., 193 F.3d 992, 995 (8th Cir. 1999); see also Jones v. Reliant Energy-ARKLA, 336 F.3d 689, 691 (8th Cir. 2003).

Upon consideration, the Court finds Plaintiff fails to establish the fourth element of his *prima facie* case of race discrimination, i.e., that similarly situated employees not in the protected group were treated differently. In order to meet this burden, Plaintiff must show there were individuals involved in or accused of the same conduct, but disciplined differently. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (citation omitted).

In his response, Plaintiff fails to identify a single employee who was similarly situated to Plaintiff, and did not lose his or her employment when the functions of the W/MBE Certification and Compliance Programs were transferred to the Airport. Rather, Plaintiff admits the only Caucasian employee on either the certification staff or the compliance staff, Keri Kugler, was laid off along with Plaintiff on September 26, 2001. (See Defendants' Facts, ¶ 50, and Plaintiff's Response thereto). Clark, 218 F.3d at 918; see also Cherry v. Ritenour School Dist., 253 F.Supp.2d 1085, 1097-98 (E.D. Mo. 2003), *aff'd*, 361 F.3d 474 (8th Cir. 2004). On these facts, the Court concludes Plaintiff has failed to establish a *prima facie* case of race discrimination, and so his Sections 1981 and 1983 race discrimination claims must be dismissed.

**IV.   Violation Of Public Policy**

Within Count II of his Complaint, Plaintiff includes the following allegations:

18.   Plaintiff, as was his duty, engaged in the honest, fair and objective effort to ascertain whether or not a particular business enterprise that applied for certification of Minority Business Enterprise (MBE) or Women Business Enterprise (WBE) status, (and the rights to minority inclusion thereby) was in fact a legitimate minority or female owned and controlled business enterprise by thorough investigation of the fact of actual ownership and control or the lack of same by investigation of documents and records, affidavits and on site investigation of actual practices.

19. Plaintiff was hindered by political interference from Defendant Mayor Slay and those under him, the Defendants Kirkland, Rainford, Hoge, and Geisman and others, in the performance of such duties by their acts to:

    I. To deny sufficient funding of staff to adequately perform such duties.

    II. To suggest that false or inaccurate determination of certification of MBE or WBE status should occur or to rush through a determination for improperly favored enterprises or to suggest that certification could occur based on the opinion of Defendants rather than determination based on objective investigation of the facts.

    III. To withdraw sole certification status authority of plaintiff Green's department and insist that Plaintiff Green and his department grant certifications based on reciprocity to be given to determinations of other entities or departments that did not engage in such same objective investigation of the facts as Plaintiff's department.

20. Such interference by defendants had the effect of having no investigation or scrutiny or very little investigation or scrutiny and thus to dishonestly certify status for such based on the defendants personal or political reasons of the Defendants regardless of objective facts or investigation and to thus do harm to legitimate MBE and WBE contractors in unfair competition with fraudulent, false, or sham MBE or WBE contractors and thus violate public policy of making honest determination of MBE and WBE status.

21. The efforts of Defendants to compel and pressure Plaintiff to engage with or collaborate with their dishonest and fraudulent acts was a fraud on the public and also would be a violation of federal law (18 U.S.C. 1341 mail fraud statute) and in all events in violation of public policy as the dishonest determinations of certification status would be published in a book or directory that would be mailed out to the public through the U.S. Mails and otherwise promulgated with the expectation that other businesses and the public would rely on it as the official "certified list" of minority or female contractors with all the rights accorded such.

22. Because plaintiff Green objected to and protested such pressure and acts of fraud and dishonesty of the defendants both within and without government the defendants conspired to and did fire or discharge the plaintiff on Sept. 26, 2001 and did thereafter refuse to rehire or further contract with him as to employment by defendants or the City of St. Louis or its agencies such as the Defendant St. Louis Development Corporation which was under their governmental control.

(Compl., ¶¶ 18-22). With these allegations, Plaintiff contends that in firing him, Defendants violated the public policy exception to Missouri's employment at-will doctrine.

Generally, in Missouri, "an employee who does not have a contract which contains a statement of duration is an employee at-will and may be discharged at any time, with or without cause, and the employer will not be liable for wrongful discharge." Dunn v. Enterprise Rent-A-Car Co., 170 S.W.3d 1, 6 (Mo. App. 2005) (citation omitted). Missouri courts have recognized a public policy exception to the employment-at-will doctrine, however. Id. (citation omitted). "The public policy exception to the at-will employment doctrine provides that an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy has a cause of action against the employer for wrongful discharge." Id. (internal quotations and citation omitted). See also Porter v. Reardon Machine Co., 962 S.W.2d 932, 938 (Mo. App. 1998) (citation omitted) ("The public policy exception to the at-will employment doctrine also requires proof of violation of a constitutional provision, a statute, a regulation, or other clear mandate of public policy.").

In the instant case, Plaintiff maintains his termination falls within the public policy exception to the employment at-will doctrine, because it was based on Defendants either violating, or instructing Plaintiff to violate, the Mail Fraud Statute, 18 U.S.C. § 1341. (Compl., ¶ 21). Upon consideration, however, the Court finds Plaintiff fails to establish Defendants engaged in mail fraud, or encouraged Plaintiff to do so. See United States v. Hively, 437 F.3d 752, 760 (8th Cir. 2006). Plaintiff's claim that Defendants' termination of his employment violated the public policy exception to Missouri's employment at-will doctrine must therefore be denied.[14]

## V.     42 U.S.C. § 1981--Interference With Contract Rights

---

[14] In light of the Court's dismissal of Plaintiff's claim of public policy violation, it need not address Defendants' sovereign immunity argument.

42 U.S.C. Section 1981 guarantees to all persons in the United States, "the same right in every State and Territory to make and enforce contracts....as is enjoyed by white citizens..." 42 U.S.C. § 1981(a). In Count II of his Complaint, Plaintiff alleges his lay-off, "constitute[d] retaliation for protecting the rights of persons to contract with the government under....42 U.S.C. 1981 and 1981a." (Compl., ¶ 24).

In order to establish a *prima facie* case of retaliation under § 1981, Plaintiff must show: 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) there existed a causal connection between the adverse employment action and Plaintiff's participation in protected activity. Ross v. Kansas City Power and Light Co., 293 F.3d 1041, 1051 (8th Cir. 2002) (citation omitted). In viewing the evidence in the light most favorable to Plaintiff, the Court finds that with his communications, including any discussions he may have had with St. Louis Post Dispatch reporters prior to publication of the June 17, 2001, article (Plaintiff's Exh. 20), Plaintiff presents an issue of fact as to whether he engaged in protected activity under § 1981. Further, as explained in Section II(A), supra, the Court finds issues of fact remain as to whether there existed a causal connection between his participation in protected activity and the adverse employment action, and whether Plaintiff is able to demonstrate Defendants' proffered reason for the employment action was pretextual. Defendants' Motion for Summary Judgment on this issue will therefore be denied.

## VI. 31 U.S.C. § 3730(h)

As stated above, in Count III of his Complaint, Plaintiff purports to bring a retaliation claim pursuant to the whistle-blower protection provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). (Compl., ¶¶ 29-34). 31 U.S.C. § 3730(h) provides in relevant part as follows:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section,

- 15 -

including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Id. In order to prove retaliation under this section, Plaintiff must show: "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity." Schuhardt v. Washington Univ., 390 F.3d 563, 566 (8th Cir. 2004) (citation omitted).

The Eighth Circuit has defined FCA protected activity as follows:

Protected activity is established when the employee's actions satisfy two conditions. First, the employee's conduct must have been in furtherance of an FCA action. Second, the employee's conduct must be aimed at matters which are calculated, or reasonably could lead, to a viable FCA action....The protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation. Indeed, § 3730(h) protects internal whistleblowers who make a complaint about fraud against the government.

Schuhardt, 390 F.3d at 567 (internal citations and footnote omitted).

Upon consideration, the Court finds Plaintiff fails to establish the first element of his FCA claim. In his Complaint, Plaintiff asserts he engaged in conduct protected by the False Claims Act, when he complained to Defendants about allegedly false reporting in grant applications regarding the inclusion of minorities and women in contracts conferred by the City and SLDC. (Compl., ¶¶ 30-33; see also Green Depo. II, PP. 82-83). Upon review of the record, however, the Court finds Plaintiff fails to present any evidence to support this assertion. Rather, Plaintiff testified in his deposition that he was unable to identify or produce any specific grant applications to which he referred in his Complaint; that he was not alleging fraudulent information was included on grant applications; that he personally never prepared any grant applications; and that he personally never reviewed any grant applications. (See Defendants' Facts, ¶¶ 35-38, citing Green Depo. II, PP. 91-93, 94-95, 96, 97).

Plaintiff further testified, with respect to the reports submitted to the federal government after grant applications are submitted, that he was unable to identify or produce any specific reports; that he had no personal knowledge the reports included false or fraudulent information; and that he personally never reviewed any reports. (See Defendants' Facts, ¶¶ 42-45, citing Green Depo. II, PP. 100, 104-06).[15] Finally, with respect to the letters and memoranda Plaintiff does reference in support of his claim, the Court finds none of the documents contains accusations of alleged fraud or illegal activity in the grant application process.[16] (See Defendants' Facts, ¶¶ 40-41, citing Green Depo. II, PP. 84-90; Defendants' Exhs. R-BB; Plaintiff's Exh. 20).[17] Defendants' Motion for Summary Judgment on Plaintiff's False Claims Act claim will therefore be granted.

### VII. Claims Against Individual Defendants In Their Official Capacities

In their final argument in favor of summary judgment, Defendants maintain that because Plaintiff asserts the same claims against the City and SLDC as he does against the individual Defendants, his claims against such individuals in their official capacities should be dismissed as

---

[15] Plaintiff further testified that he personally never discussed either the grant applications or the reports with any of the Defendants. (See Defendants' Facts, ¶¶ 39, 46, citing Green Depo. II, PP. 99-100, 101-02).

[16] The Court's review of the record reveals no references to the grant application process at all.

[17] In Robertson v. Bell Helicopter Textron, Inc., the Fifth Circuit held as follows:
> In the cases cited above (in which internal whistle blowers who reported concerns to their superiors were protected by § 3730(h)), the employees did not file *qui tam* actions, but they did express concerns about possible fraud to their employers. By contrast, in this case, Robert admitted that he never used the terms "illegal," "unlawful," or "*qui tam* action" in characterizing his concerns about Bell's charges....As a result, we conclude that Robertson's reporting did not constitute protected activity under the False Claims Act.

Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) (footnote omitted). Cf Schuhardt, 390 F.3d at 567-68 (concluding there was sufficient evidence to show Schuhardt's activity was in furtherance of a *qui tam* action, when she, "advised her supervisor that the activity may be fraudulent and illegal.").

duplicative. (Defendants' Memo in Support, P. 17). Upon consideration, the Court agrees, as, "a suit against a supervisor in his or her official capacity is treated as a suit against the employer itself." Coller v. State of Mo., Dept. of Economic Development, 965 F.Supp. 1270, 1275 (W.D. Mo. 1997) (citations omitted). Plaintiff's claims against the individual Defendants in their official capacities will therefore be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 87) is **GRANTED** in part and **DENIED** in part, in accordance with the above terms and conditions.

**IT IS FURTHER ORDERED** that this matter is set for trial on **Wednesday, August 16, 2006**, at **9:00 a.m.** in the courtroom of the undersigned.[18]

**IT IS FURTHER ORDERED** that all pretrial submissions in this matter must be filed no later than **Tuesday, July 18, 2006**.

**IT IS FURTHER ORDERED** that any motions in limine must be filed no later than **Friday, July 28, 2006**, and responses to such motions must be filed no later than **Friday, August 4, 2006**.

Dated this 15th day of June, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[18] Pursuant to the above rulings, trial will proceed on the following issues only: (1) Plaintiff's First Amendment retaliation claim, regarding his objections to the certification process; and (2) Plaintiff's § 1981 claim regarding interference with contract rights in relation to the certification process. Further, trial will proceed against Defendants Slay, Rainford, Geisman, Kirkland and Hoge in their individual capacities only.

- 18 -